## United States District Court
## District of Massachusetts

|  |  |
|---|---|
| Jorge Adames-Garcia, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 21-11016-NMG |
| Matthew Divris, ) | |
| ) | |
| Respondent. ) | |
| ) | |

### MEMORANDUM & ORDER

GORTON, J.

This case arises from a petition of Jorge Adames-Garcia ("Adames-Garcia" or "petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After consideration of his petition, Magistrate Judge Judith G. Dein filed a Report and Recommendation ("R&R") in response to which respondent Matthew Divris ("Superintendent" or "respondent") filed objections.  The Court now addresses those objections.

### I.  Background

The underlying facts of this case are provided in detail in the order of the state trial court denying defendant's motion for a new trial, the affirmance by the Massachusetts Appeals Court ("MAC") and the R&R.  The Court will not repeat them. Relevant here are petitioner's convictions on two counts of

aggravated rape, in violation of M.G.L. c.265 § 22, and one count of kidnapping, in violation of M.G.L. c.265 § 26, for which petitioner was sentenced to 10 to 18 years of imprisonment.

In 2018, Adames-Garcia moved for a new trial based on alleged Sixth Amendment violations. Barnstable County Superior Court Judge Kathe M. Tuttman denied the petition, finding that, although jurors had been exposed to extraneous information during deliberations, petitioner did not suffer prejudice warranting a new trial. The MAC affirmed and the Massachusetts Supreme Judicial Court ("SJC") denied petitioner's request for Further Appellate Review.

In June, 2021, Adames-Garcia filed the instant petition for habeas corpus. Respondent, the Superintendent of NCCI Gardner, filed a timely response in opposition. The matter was referred to the Magistrate Judge who issued her final R&R in July, 2024.

The Magistrate Judge recommends that this Court grant the habeas petition, concluding that the disposition by the MAC of petitioner's claims was (1) contrary to and (2) an unreasonable application of clearly established federal law and (3) based on an unreasonable determination of the facts. In August, 2024, the Superintendent filed objections to the R&R (Docket No. 78), discussed in detail infra.

-2-

## II. **Legal Standard**

When a district judge refers a petition for habeas relief to a magistrate judge for recommended disposition, the district judge must review de novo any part of the recommendation to which an objection has been properly registered. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).  The district judge may accept, reject or modify, in whole or in part, the recommendations of the magistrate judge. § 636(b)(1); United States v. Lawlor, 406 F.3d 37, 40 (1st Cir. 2005).

### a. **Habeas Review**

A person in custody pursuant to the judgment of a state court may file an application for a writ of habeas corpus on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that the underlying state court adjudication either:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of subsection (d)(1) constitute distinct errors.  A state court decision is "contrary to" clearly established federal law when it applies a legal standard not required by the Supreme Court or resolves a case differently than the Supreme Court has in a case containing materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000); see Cullen v. Pinholster, 563 U.S. 170, 182 (2011).  In contrast, a state court "unreasonably applies" the law when it "correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002).

Section 2254 sets out a "separate and exacting standard" to evaluate a state court's factual findings. Pike v. Guarnino, 492 F.3d 61, 68 (1st Cir. 2007).  The federal court must afford a presumption of correctness to a state court's factual findings absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). A state court decision is therefore based on an "unreasonable determination of the facts" when clear and convincing evidence demonstrates that

> the underlying state court's adjudication "resulted in
> a decision that was based on an unreasonable
> determination of the facts in light of the evidence
> presented" to the state court.

Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).

### b. A Criminal Defendant's Sixth Amendment Rights to Confrontation and an Impartial Jury

The Sixth Amendment of the U.S. Constitution guarantees a criminal defendant the rights to confrontation and an impartial jury. U.S. Const. Amend. VI; see Murphy v. Thompson, 497 F. Supp. 2d 47, 53 (D. Mass. 2007). The Due Process Clause of the Fourteenth Amendment renders those rights applicable to the States. U.S. Const. Amend. XIV §2; see Pena-Rodriguez v. Colorado, 580 U.S. 206, 210-11 (2017). The potential introduction of extraneous materials to jurors post-empanelment implicates both sets of rights.

A jury is considered "impartial" when it is "capable and willing to decide the case solely on the evidence before it." McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984)(internal quotations omitted). One way of biasing jurors is to expose them to extraneous case-related information, i.e., evidence not admitted during trial. See United States v. Barone, 846 F. Supp. 1016, 1019 (D. Mass. 1994) (citing United States v. Ruggiero, 928 F.2d 1289, 1300-02 (2d Cir.); Turner v. Louisiana, 379 U.S. 466, 472-73 (1976).

Moreover, the introduction of evidence that was not produced at trial infringes on a defendant's Confrontation rights because it deprives the defendant of his opportunity to

-5-

test "the believability of a witness and the truth of his testimony." United States v. Ovalle-Marquez, 36 F.3d 212, 217 (1st Cir. 1994) (quoting United States v. Carty, 993 F.2d 1005, 1009 (1st Cir. 1993)).

Both the U.S Supreme Court and SJC have outlined procedures to determine whether the impact of extraneous materials on jurors violate a defendant's Sixth Amendment rights. In Remmer v. United States, 347 U.S. 227 (1954), the Supreme Court established that any external influence on a juror is to be "deemed presumptively prejudicial," such that the "burden rests heavily with the Government" to prove the influence was harmless to defendant. Id. at 229. The Court instructed that a trial judge should conduct a hearing to "determine the circumstances, the impact thereof upon the juror, and whether or not [the extrinsic material] was prejudicial" to the defendant. Id. at 230.

Massachusetts law imposes an even heavier burden on the government. Once a defendant has shown by a preponderance of the evidence that the jury has been exposed to an external influence, the government must prove "beyond a reasonable doubt" that the jury's exposure to such information did not prejudice the defendant. Commonwealth v. Kincaid, 444 Mass. 381, 391, 828 N.E.2d 45, 52 (2005).

III. **Analysis**

    **a. Procedure When Questioning Jurors**

The Magistrate Judge first concludes that the procedure followed by trial Judges Tuttman and Barrett in questioning jurors about their exposure to extraneous materials was contrary to and an unreasonable application of clearly established law, "made clear in light of" the First Circuit Court of Appeals holding in United States v. Tsarnaev, 96 F.4th 441 (1st Cir. 2024).

First, she finds fault with how the trial judges handled the allegation of extraneous influence on the day that defense counsel raised the issue with the court. Judge Tuttman did not allow individualized inquiry of each juror about his or her exposure to the Facebook posts. Judge Barrett subsequently reminded the jurors about their responsibility to follow all instructions previously given by Judge Tuttman, before instructing them to continue deliberating. The Magistrate Judge describes that procedure as insufficiently rigorous and in contravention of the trial court's obligation "to examine scrupulously any suggestion of [inappropriate] communications." United States v. Doe, 513 F.2d 709, 711-12 n.3 (1st Cir. 1975).

The R&R concludes that Judge Tuttman's post-trial inquiry did not compensate for the initial mistakes made at trial and that it was constitutional error for Judge Tuttman (1) not to

clarify ambiguous responses provided by jurors and (2) not to interrogate Jurors 7 and 9 as to why they failed to report their exposure to the Facebook posts when prompted by Judge Barrett.

Respondent counters that the cases that are relied upon in the R&R, including Tsarnaev, are "not apt comparators" to the facts of the present case. He adds that any disapproval of Judge Barrett's conduct is unavailing because petitioner did not contest it contemporaneously. This Court agrees on both counts.

Habeas relief cannot be granted based on any deficiency in Judge Barrett's oral instructions to the jury because petitioner neither exhausted such a claim in his state court appeals nor raised it in his federal petition to this Court. See, e.g., Rhines v. Weber, 125 S.Ct. 1528, 1533 (2006). The only conduct at issue is therefore that of trial Judge Tuttman.

The R&R relies heavily on the First Circuit's holding in Tsarnaev to establish the standard to which Judge Tuttman is to be held. Respectfully, that is ill-conceived. Any reference to Tsarnaev is irrelevant in the context of a habeas inquiry because only judicial opinions of the United States Supreme Court constitute "established Federal law" for the purpose of § 2254(d)(1). See Marshall v. Rodgers, 569 U.S. 58, 61 (2013). The First Circuit holding in Tsarnaev has not been affirmed by the Supreme Court. It was not therefore reversible error for the state trial court to "decline to apply a specific legal rule

-8-

that has not been squarely established by the Supreme Court." Grant v. Maine State Prison, 616 F.3d 72, 79 (1st Cir. 2010)(quoting Knowles v. Mirzayance, 556 U.S. 111, 121-22 (2009)).

The R&R deflects that proposition by suggesting that Tsarnaev is based on "well-established principles" set forth in other Supreme Court caselaw, namely McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984), but this Court is of a contrary opinion.

The Supreme Court in McDonough sets no bright-line rule for follow-up questions a trial judge must ask jurors to detect potential bias. It merely prescribes a two-part test to determine whether a petitioner is entitled to a new trial if a juror is untruthful during voir dire. The petitioner must show that

> (1) the juror "failed to answer honestly a material question on voir dire," and
>
> (2) "a correct response would have provided a valid basis for a challenge for cause."

Id. at 556. The opinion in McDonough is silent as to the responsibility of the trial judge to inquire into the reasons why a juror responded falsely.

Justice Brennan, in his concurrence, approaches that issue but only to instruct that

> whether an inaccurate answer was inadvertent or
> intentional [is a] factor[] to be considered [in
> assessing juror bias].

Id. at 558 (Brennan, J., concurring in the judgment). Again,
the trial judge is not given specific instructions about juror
cross-examination. He or she is well-positioned to assess a
juror's credibility without the necessity for questioning
motives. Such a determination is "peculiarly within a trial
judge's province and [is] accorded great deference." Amirault v.
Fair, 968 F.2d 1404, 1405 (1st Cir. 1992) (per curiam)(internal
quotation marks omitted). A reviewing habeas court ought to
afford that same deference to the trial judge who empaneled the
jury and conducted the trial. See United States v. Tsarnaev, 595
U.S. 302, 317 (2022)(cautioning federal habeas courts against
"prescribing specific lines of questioning" and thereby
"supplant[ing] [the trial court's] broad discretion" in
conducting voir dire).

This Court finds nothing unreasonable about the
identification or application of relevant federal law by the MAC
to evaluate Judge Tuttman's conduct. The trial judge properly
investigated the possibility of extraneous influence on jurors
as soon as it was called to her attention. She then evaluated
the likelihood of juror influence and potential prejudice to
petitioner. The parties agreed, as does this Court, that her
procedure emulated the two-step process required by both the

SJC, in <u>Kincaid</u> and the Supreme Court, in <u>Remmer</u>. Her examination of each juror was circumspect and properly avoided "exploration into the jury's sovereign space" by not probing into the content of jury deliberations. <u>Yeager</u> v. <u>United States</u>, 557 U.S. 110, 122 (2009); <u>see also</u> <u>Mahoney</u> v. <u>Vondergritt</u>, 938 F.2d 1490, 1492 (1st Cir. 1991). The trial judge was not, as the Magistrate Judge suggests, obligated to ask particular, <u>sua sponte</u> questions which were neither requested by counsel nor prescribed by the Supreme Court.

### b. Factual Conclusions Regarding Credibility of Juror 7

The Magistrate Judge finds that Judge Tuttman's opinion was based on an unreasonable determination of the facts, i.e., that Juror 7 was not credible. Respondent counters that the R&R fails to afford "sufficient deference" to the trial judge's conclusion and conducts an improper <u>de novo</u> review of the cold record of the post-trial hearing.

A federal court is, for good reason, prohibited from substituting its own credibility assessment for that of the trial judge. Judgments about juror credibility and suitability are "often made partially in response to nuance, demeanor, body language, and a host of kindred considerations," all of which are only observable by the trial judge. <u>Caldwell</u> v. <u>Maloney</u>, 159 F.3d 639, 649 (1st Cir. 1998) (quoting <u>United States</u> v. <u>Bergodere</u>, 40 F.3d 512, 517 (1st Cir. 1994) (internal quotations

-11-

omitted).  Judge Tuttman was unequivocally in a better position
than any of the judicial officers, including this one, who have
since reviewed the record to evaluate Juror 7's "personal
reactions to specific questions." Caldwell v. Dubois, 999 F.
Supp. 199, 207 (D. Mass. 1998), reversed on other grounds,
Maloney, 159 F.3d.

Nevertheless, the Magistrate Judge recommends that this
Court override Judge Tuttman's credibility determination because
Judge Tuttman found that parts of Juror 7's testimony were
credible but not others.  Her finding was not, as the R&R
suggests, therefore inconsistent.  It is a common occurrence
that a witness is credible sometimes but not all of the time.
See United States v. Lizardo, 445 F.3d 73, 85 (1st Cir. 2006);
United States v. Rothrock, 806 F.2d 318, 321 (1st Cir. 1986 ("A
jury is entitled to believe some part of a witness's testimony
and not another.").

The trial judge was also criticized in the R&R for
substituting her own evaluation of the evidence for that of the
jury when she doubted Juror 7's claim that the evidence against
petitioner "was not strong."  That criticism is misplaced,
however, because Judge Tuttman's assessment was informed by the
testimony of all of the other jurors interviewed, each of whom
confirmed that he or she was unaffected by any external
influence.  It was not unreasonable, then, for Judge Tuttman to

attribute Juror 7's claim of undue influence, made 18 months
after the trial and uncorroborated by other jurors, to a change
of heart in hindsight.

### c. Legal Conclusions with Respect to Sixth Amendment

Finally, the Magistrate Judge recommends in the R&R a
finding that petitioner suffered a violation of his Sixth
Amendment rights because (1) Juror 7 testified that she was
"influenced and intimidated by the Facebook posts and the
presence of the crowd," and (2) the jury as a whole was
"subjected to pressure from their neighbors in a closely knit
community." Respectfully, the Court disagrees with the
recommended finding and the reasoning upon which it is based.

First, it is contrary to the factual record as developed by
Judge Tuttman through her inquiries of each juror. Nine of the
11 jurors interviewed testified that they did not see the
Facebook posts at all. No juror, other than Juror 7, indicated
that he or she understood that the spectators in the courtroom
were present specifically in support of the victim in
petitioner's case. No juror, other than Juror 7, claimed that
the posts or the protestors were discussed during jury
deliberations. And perhaps foremost, no juror, other than Juror
7, stated that he or she felt pressure to change his or her
decision. It was reasonable and consistent (1) for Judge
Tuttman to discredit Juror 7's testimony, (2) for the MAC to

affirm her decision, and (3) to conclude that petitioner
suffered no prejudice in light of the post-trial examination of
jurors.

Second, the Magistrate Judge's reliance on Supreme Court
cases Parker v. Gladden, 385 U.S. 363 (1966) and Turner v.
Louisiana, 379 U.S. 466 (1965), to establish prejudice is
unwarranted.  Both cases involve instances of extraneous
influence upon jurors that were both conclusively established in
the factual record and much more direct than those suggested in
this case.  In Parker, a bailiff in the courtroom opined to a
juror on multiple occasions that he believed the defendant was
guilty.  Turner similarly found that jurors were prejudiced by
frequent communications with two of the government's principal
witnesses.  Here, there were no reported attempts, overt or
otherwise, to communicate with the jury or to influence the
verdict.  Neither the Facebook posts nor the courthouse protests
were intended to send a message to the jurors.  The protestors
did not directly criticize, attempt to engage or successfully
communicate with a single juror.

Finally, the R&R is critical of the failure of the
previously presiding state judicial officers to "reconcile the
guilty verdicts with the seven not-guilty verdicts" rendered by
the jury before the purported introduction of extraneous
information.  In essence, the theory expounded in the R&R is

-14-

that the only reasonable explanation for not-guilty verdicts one day and guilty verdicts the next is that the jury was biased by extraneous materials to which it was exposed in the meantime.

No such "reconciliation" is necessary.  The jury did not contradict itself (or render an "inconsistent" verdict) by finding petitioner guilty of some charges but not others.  A split verdict may reasonably have been motivated by many factors other than the influence of extraneous information.  In fact, the record shows that before the posts or the appearance of protestors, the jury was struggling mightily with the three undecided counts after having agreed to acquittals on the first seven.

The affirmance by the MAC of Judge Tuttman's decision that petitioner suffered no Sixth Amendment violation was therefore a reasonable application of controlling Supreme Court precedent and based upon a reasonable interpretation of the facts in this case.

This is not to conclude that the jury trial was conducted without flaw.  Rarely, if ever, is that the case and the Magistrate Judge has properly pointed out several flaws here.  But "even a strong case for relief does not indicate that the state court's conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011).  A habeas petitioner is not entitled to relief so long as "fairminded jurists could disagree

-15-

on the correctness of the state court's decision." Id. at 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). That is the case before us.

It is easy to be a Monday-morning quarterback with instant replay but there are sound reasons for the obligatory deference due to the trial judge who empanels the jury, hears the evidence and observes the trial.

After careful consideration, the Magistrate Judge respectfully disagreed with the findings and conclusions of the trial judges, the MAC and the SJC. And after careful reconsideration, this Court respectfully disagrees with the Magistrate Judge and will therefore reject the R&R and dismiss the petition for writ of habeas corpus.

## ORDER

For all of these reasons, the Report and Recommendation (Docket No. 73) is **REJECTED** and the petition for writ of habeas corpus (Docket No. 1) is **DISMISSED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated December 3, 2024